UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| DC PLASTIC PRODUCTS CORPORATION, | Civil Action No. 17-13092 (SRC) |
| Plaintiff, | OPINION & ORDER |
| v. | |
| WESTCHESTER SURPLUS LINES INSURANCE COMPANY, | |
| Defendant. | |

**CHESLER**, District Judge

This matter comes before the Court upon the filing by Defendant Westchester Surplus Lines Insurance Company ("Westchester," or "Defendant") of a motion for partial summary judgment (Docket No. 18), pursuant to Federal Rule of Civil Procedure 56. Plaintiff DC Plastic Products Corporation ("DC Plastic," or "Plaintiff") opposes this motion (Docket Nos. 20, 21), and Defendant has submitted a reply brief (Docket No. 26). The Court has reviewed the parties' submissions and proceeds to rule without oral argument. See Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendant's motion is denied without prejudice.

I.  **FACTUAL BACKGROUND**[1]

Plaintiff is a plastic bag manufacturer that operated out of an industrial building it owned in Bayonne, New Jersey. Def. SUMF ¶¶ 1-2. Defendant insured this premise for property

---

[1] The following factual background is based on assertions in Defendant's Statement of Undisputed Material Fact (Docket No. 18-2, "Def. SUMF") pursuant to Local Civil Rule 56.1 that are admitted or uncontroverted in Plaintiff's Statement of Undisputed Material Fact (Docket No. 20, "Pl. SUMF")

1

damage and economic loss ("business interruption"), under a policy with a blanket coverage limit of $5 million for total loss. Id. ¶¶ 3-4. The policy contains a cooperation clause, which imposes on Plaintiff the duty to "[c]ooperate with [Defendant] in the investigation or settlement of the claim." Id. ¶ 5.

In October 2012, Superstorm Sandy damaged the premises, and Defendant subsequently investigated and evaluated the extent of equipment and property damage. Id. ¶¶ 6-7. By letter dated March 4, 2014, an adjustment firm employed by Defendant provided the following calculation of Plaintiff's net losses: $624,040.90 in net building loss, $248,036.99 in net machinery and equipment loss, and $89,025 in net other losses. On the basis of this appraisal, Defendant paid Plaintiff $951,102.89 as adjustment for the property loss. Docket No. 18, Ex. C. Plaintiff responded in July 2014 by submitting its own appraisal of the personal property damage, which it assessed at approximately $3.7 million to rebuild damaged machinery (Docket No. 18, Ex. D), $1.1 million in roof damage, and one-half million in damage to corrugated siding and windows, for a total estimated property loss of $5.4 million. Docket No. 18, Ex. E; Id, Ex. I (March 2016 letter from counsel for Defendant, noting that "in approximately July of 2014, DC Plastic presented new estimates in support of its building and business personal property claims, seeking upwards of $5.4 million."). Plaintiff's $5.4 million estimate of the property damage exceeded the combined $5 million policy limit for property damage and business interruption loss.

After Defendant paid Plaintiff $951,102.90 for the property damage claim, the parties engaged in extended back and forth correspondence regarding the scope of Plaintiff's insurance claim. By letter dated October 2015, Defendant requested that Plaintiff produce documents in support of any business interruption claim and that Plaintiff submit to an Examination Under

Oath ("EUO"). Def. SUMF ¶¶ 11-12. In response, Plaintiff did not provide documents related to a business interruption claim, nor did Plaintiff provide such information at the EUO. In three letters dated March 2, March 29, and June 12, 2016, Defendant corresponded with Plaintiff to determine whether it would file a business interruption claim. Id. ¶¶ 17-19, 21. On June 13, 2016, Plaintiff promised to provide its business interruption claim by the end of the week, although it did not do so (id. ¶ 22), and on July 7, 2016, Defendant denied Plaintiff's business interruption claim. Id. ¶ 23. Plaintiff ultimately submitted a business interruption claim in February 2017. Id. ¶ 25.

In its motion, Defendant argues that summary judgment is appropriate for the business interruption claim because Plaintiff breached the policy's cooperation clause "by failing to timely provide any information in support of a business interruption claim." Docket No. 18, 8.

## II. LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party must support its motion by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c).

As the moving party, Defendants bear the burden of showing the absence of any genuine issues of material fact. Celotex, 477 U.S. at 323. An issue is "genuine" if the evidence is such that a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In the summary judgment context, "inferences to be drawn from the

underlying facts must be viewed in the light most favorable to the opposing party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Defendants may satisfy their burden by either (1) submitting affirmative evidence that negates an essential element of Plaintiff's claim; or (2) demonstrating to the Court that the Plaintiff's evidence is insufficient to establish an essential element of Plaintiff's case. Celotex, 477 U.S. at 331. Once the moving party satisfies its burden under Rule 56, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

In its motion, Defendant argues that summary judgment is appropriate for the business interruption claim because Plaintiff breached the policy's cooperation clause "by failing to timely provide any information in support of a business interruption claim." Docket No. 18, 8.

If the insured acts in good faith, the insurer may not deny coverage based on breach of the policy's cooperation clause unless the insurer suffers "appreciable prejudice" as a result of the breach. Hager v. Gonsalves, 398 N.J. Super. 529, 534 (N.J. App. Div. 2008) (The "insurer must show that it was appreciably prejudiced by its insured's failure to cooperate in order to disclaim coverage based on that failure."). In its motion, Defendant further argues that the "appreciable prejudice" standard does not apply because Plaintiff's "egregious failure to provide documents" constitutes bad faith. Docket No. 18, 12.

Because there are genuine issues of material fact regarding whether Plaintiff breached the policy's cooperation clause as well as whether Defendant suffered "appreciable prejudice" as a result, this Court will deny without prejudice Defendant's motion for partial summary judgment regarding Plaintiff's business interruption claim.

4

### a. Whether Plaintiff Breached the Policy Cooperation Clause is a Genuine Issue of Material Fact

Defendant argues that Plaintiff breached the policy's cooperation clause by "failing to timely provide any information in support of a business interruption claim," and by filing the claim "seven months after it was denied and more than four years after the date of loss." Docket No. 18-1, 7-9. As the cooperation clause constitutes a condition precedent to coverage for business interruption loss, Defendant argues that such breach entitles it to summary judgment for this claim. Since Plaintiff's breach of the cooperation clause is a genuine issue of material fact, however, this Court will deny summary judgment.

Regarding the information that Plaintiff provided to support its business interruption claim, a reasonable jury could find that Plaintiff provided sufficient information so as to not breach the cooperation clause. The policy outlines eight duties incumbent on the insured in the event of loss:

> (1) Notify the police if a law may have been broken.
>
> (2) Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.
>
> (3) As soon as possible, give us a description of how, when, and where the direct physical loss or damage occurred.
>
> (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim . This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.
>
> (5) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for

> inspection, testing and analysis, and permit us to make copies from your books and records.
>
> (6) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.
>
> (7) Cooperate with us in the investigation or settlement of the claim.
>
> (8) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

Docket No. 18, Ex. B (the "Policy"), 32. In its motion, Defendant does not take issue with Plaintiff's compliance with the first four duties. While not expressly referencing 'cooperation,' these first four duties nevertheless concern Plaintiff's cooperation with the investigation and settlement of the claim, such as Plaintiff providing the insurer with notice and a description of the direct physical loss. As such, Defendant appears to tacitly acknowledge that Plaintiff cooperated in certain aspects of the adjustment.

The nearly million-dollar adjustment in March 2014 for Plaintiff's personal property and building loss suggests that Defendant did not deem that Plaintiff had breached the cooperation clause with respect to other types of covered losses. Indeed, Defendant arguably could not have calculated such adjustment without adequate cooperation and information sharing from Plaintiff. Defendant has not indicated that Plaintiff denied it access to conduct a full and thorough examination of the building, premises, and machinery when adjusting for the personal property loss, nor has Defendant indicated that Plaintiff denied it access to examine its books and records after submission of the business interruption claim. On this basis, it does not appear that Plaintiff ever took affirmative steps to prevent or impede Defendant's access to information relevant to the business interruption claim.

Plaintiff's purported lack of cooperation appears genuinely debatable in light of the substantial overlap in information required in the submission of personal property and business interruption claims. The policy states that the "amount of Business Income Loss will be determined based on" the net income prior to the loss, the likely net income without the loss, and any operating expenses necessary to resume pre-loss operations. Policy, "Loss Determination," 33. The operating costs necessary to resume operations at pre-loss levels, however, bears a direct and proportional relationship to the quantum of personal property and machinery loss. As noted above, Defendant must not have found Plaintiff's cooperation inadequate with regards to the property losses because Defendant successfully adjusted this claim in March 2014. A reasonable jury could accordingly find that Plaintiff did not violate the cooperation clause for the business interruption claim because it had already provided a preponderance of the requisite information during the previous adjustment of its personal property claim.

With respect to Plaintiff's dilatory filing of the business interruption claim in February 2017—seven months after Defendant had denied this claim and four years after the loss—a reasonable jury could determine that this filing date was not sufficiently belated so as to violate the cooperation clause. In its motion, Defendant cites various moments in the claim investigation timeline in which it requested confirmation of Plaintiff's intention of filing a business interruption claim, e.g. the initial investigation in November 2012, the EUO in December 2015, three letters dated March 2, March 29, and June 12, 2016, etc. The various letters and correspondence, however, do not reveal that Defendant ever indicated to Plaintiff, prior to the July 2016 denial letter, that the potential business interruption claim would be terminated for failure to cooperate. Further, it appears that Defendant never provided certifications or affidavits stating that the material and information it had hitherto received during the personal property loss

7

adjustment was insufficient to support a business interruption claim. A reasonable jury could accordingly find that this extended back-and-forth correspondence merely reflects the lengthy process inherent to the accurate adjustment of insurance claims, and not evidence that Plaintiff expressly refused to cooperate in the investigation and settlement of the business interruption claim.

Plaintiff appraised its own personal property losses at $5.4 million, in excess of the $5 million in blanket coverage. If Defendant had modified its property loss adjustment to correspond to Plaintiff's appraisal, the coverage ceiling would be met and it would have been moot for Plaintiff to file a business interruption claim. Plaintiff only filed its business interruption claim after Defendant adjusted the personal property claim for less than $1 million. As such, a reasonable jury could determine that Plaintiff's filing of the claim in February 2017, seven months after Defendant rejected it, does not constitute a failure to cooperate but rather a prudent, reasonable approach that avoided unnecessary expense and paperwork for both parties. Indeed, had Defendant adjusted the personal property loss at $5 million, then Plaintiff's failure to submit a business interruption claim concomitant with its personal property claim would have saved Defendant the unnecessary expense in investigating and appraising business interruption losses that could not be compensated above and beyond the policy's blanket coverage limit. For the forgoing reasons, this Court finds that Plaintiff's breach of the cooperation clause constitutes a genuine issue of material fact that precludes summary judgment pursuant to Rule 56.

### b. Whether Plaintiff Acted in Bad Faith and Caused Defendant to Suffer Appreciable Prejudice are Genuine Issues of Material Fact

Even if this Court assumes *arguendo* that Plaintiff breached the policy's cooperation clause, such a technical breach of a contractual provision does not does not warrant summary judgment on the business interruption claim unless this failure to cooperate caused Defendant to

suffer appreciable prejudice. See Hager, 398 N.J. Super. at 534. Two factors bear on whether the insurer has suffered 'appreciable prejudice': 1) where "substantial rights have been irretrievably lost by virtue of failure of the insured to notify the carrier in a timely fashion"; and 2) where the failure to cooperate "pertains to the likelihood of success of the insurer in defending against the accident victim's claim." Sagendorf v. Selective Ins. Co. of Am., 293 N.J. Super. 81, 93 (N.J. App. Div. 1996). Several factors arguably mitigate against Defendant having irretrievably lost substantial rights or a reduced likelihood of successfully defending its claim due to Plaintiff's dilatory filing of the business interruption claim. Accordingly, the 'appreciable prejudice' Defendant suffered constitutes an additional genuine issue of material fact that precludes summary judgment.

In its motion, Defendant argues that "[g]iven the length of time that has passed since the loss, and the fact that Plaintiff has apparently now ceased business operations altogether, the opportunity to thoroughly investigate the legitimacy of Plaintiff's business interruption claim is no longer available." This argument fails for several reasons. While Defendant refers to the more than four-year period from the October 2012 arrival of Superstorm Sandy to Plaintiff's February 2017 filing of the business interruption claim, the relevant time period for assessing Defendant's appreciable prejudice is arguably more limited. The parties engaged in extensive back-and-forth correspondence from 2012 through the middle of 2016 regarding the adjustment process. Although Defendant cites various letters in which it requested confirmation from Plaintiff regarding the filing of the business interruption claim, Defendant has not indicated any evidence to suggest that it had denied Plaintiff's business interruption claim prior to the letter dated July 7, 2016. Similarly, the appreciable prejudice resulting from Plaintiff's dilatory filing of the claim should arguably not be assessed as of today, but from February 2017, when Plaintiff brought its business interruption claim. As such, while nearly six years have passed since Superstorm Sandy, the relevant time

9

period for determining the prejudicial effect of Plaintiff's failure to cooperate is the significantly more limited seven-month window from July 2016 to February 2017. Defendant provides no evidence to support its bald assertion that it lost "opportunity to thoroughly investigate the legitimacy of Plaintiff's business interruption claim" during this narrower seven-month window.

A reasonable jury could further find that Plaintiff's failure to cooperate minimally prejudiced Defendant in light of the substantial overlap in documents required between the submission of personal property and business interruption claims. As noted above, the policy stipulated that the business loss claim is calculated by, in part, assessing the "operating expenses necessary to resume pre-loss operations." Defendant concedes, however, that Plaintiff provided appraisals and supporting documentation for such costs by letter dated July 2014, nearly two years before Defendant denied Plaintiff's business interruption claim. Defendant has not indicated that Plaintiff denied a full and thorough examination of the premises and machinery during the property loss adjustment, nor that Plaintiff denied Defendant access to examine its books and records after submission of the business interruption claim in February 2017. On this record, the prejudice Defendant suffered as a result of Plaintiff's dilatory filing of its business interruption claim constitutes a further genuine issue of material fact that precludes summary judgment under Rule 56.

## IV.  CONCLUSION

Accordingly, for the foregoing reasons; and for good cause shown;

**IT IS** on this 5th day of June, 2018;

**ORDERED** that Defendant's motion for partial summary judgment as to the business interruption claim is **DENIED** without prejudice.

    /s Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge