NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DC PLASTIC PRODUCTS CORP., <br><br> Plaintiff, <br><br> v. <br><br> WESTCHESTER SURPLUS LINES INSURANCE CO., <br><br> Defendant. | Civil Action No. 17-13092 (SRC) <br><br> **OPINION & ORDER** |

**CHESLER**, District Judge

This matter comes before the Court on Plaintiff's motion for partial summary judgment and on Defendant's motion for complete summary judgment. The motions have been fully briefed, and the Court has reviewed the papers filed by the parties. The Court has determined that oral argument is not necessary and rules on the motions as follows.

**I. OPINION**

**A. Background**

This case revolves around Plaintiff DC Plastic Products Corporation's ("Plaintiff" or "DC Plastics") insurance claim for damages sustained at its Bayonne, New Jersey premises due to Superstorm Sandy. Defendant Westchester Surplus Lines Insurance Company ("Defendant" or "Westchester") is an insurance company that insured Plaintiff's premises under a policy effective at the time of Superstorm Sandy (the "Policy"). After Plaintiff's premises suffered damages as a result of Superstorm Sandy in October of 2012, Plaintiff submitted claims with Defendant for

1

building and property damage under the Policy. Then, as a result, Defendant paid Plaintiff $951,102.89.

In the near decade since Superstorm Sandy occurred, Plaintiff and Defendant have disagreed as to whether Plaintiff is due additional payments under the Policy. Indeed, in 2017, Plaintiff brought suit against Defendant in state court, and the case was later removed by Defendant to this Court. Then, in August of 2018, Plaintiff filed a motion to compel appraisal for its claims, requesting that the Court appoint an umpire for this appraisal process, and that the court proceedings be stayed in the meantime. Defendant then cross-motioned to dismiss Plaintiff's case in its entirety. Subsequently, Magistrate Judge Waldor issued a report and recommendation, recommending that Defendant's motion to dismiss should be granted, primarily due to Plaintiff's repeated disregard of the Court's prior discovery orders. However, on the same day, Plaintiff's then-counsel filed a letter voluntarily dismissing all of Plaintiff's claims for business interruption damages, as well as any of its bad faith claims for damages. Since Magistrate Judge Waldor did not have an opportunity to consider Plaintiff's letter dismissing some of its claims before entering her report and recommendation, the Court then remanded the matter back to Magistrate Judge Waldor for further consideration in light of this additional information. Later on, in February of 2021, both parties filed what they characterized as motions for summary judgment, which are now before the Court. Defendant seeks complete summary judgment in its favor, and Plaintiff seeks what it has labeled summary judgment in part for the appointment of an umpire.

B. **Discussion**

Before turning to either of the motions for summary judgment, the Court must first address Defendant's argument in its briefs that Magistrate Judge Waldor previously terminated Plaintiff's motion for appointment of an umpire and dismissed Plaintiff's "supplemental damages" claim for damages to its machinery and property (i.e., Plaintiff's claims for additional machinery and property damage that were filed in 2014). In support of this argument, Defendant points to two text orders entered on the case docket by Magistrate Judge Waldor in February of 2019 after a case status conference. In the first, Magistrate Judge Waldor ordered that: "Plaintiff will supply to defendant and the Court all trial proofs on the remaining counts of the complaint (initial damages to machine and building, not including the supplemental claims) by March 11, 2019. . . ." Docket Entry No. 50. In the second, Magistrate Judge Waldor ordered that: "The Motion to Compel Appraisals, for Court Appointment of Umpires, and for Stay of Proceedings (DE 31) is hereby terminated." Docket Entry No. 51.

While Defendant argues that these text orders by Magistrate Judge Waldor support its conclusion, the Court finds that there is nothing in the record indicating that the claim for "supplemental damages" and the motion for appointment of an umpire were dismissed. Magistrate Judge Waldor's text orders do not purport to dismiss those issues. Further, Magistrate Judge Waldor is fully aware that, without consent of the litigants, a magistrate judge is not authorized to make such case dispositive orders. See 28 U.S.C. § 636(b)(1)(A) ("[A] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except [among other things,] a motion . . . to dismiss for failure to state a claim upon which relief

3

can be granted, and to involuntarily dismiss an action. . . ."). Therefore, Plaintiff's requests for "supplemental damages" and appointment of an umpire have not been dismissed.

Next, the Court will examine Plaintiff's current motion for summary judgment in part for the appointment of an umpire. Defendant argues that this motion is not appropriate for summary judgment because granting Plaintiff's motion would not completely resolve this action. However, whether or not Plaintiff's motion is properly characterized as a motion for partial summary judgment, being that, from the outset, Plaintiff sought in its Complaint that the Court appoint an umpire for the appraisal process, the Court will consider Plaintiff's request for the appointment of an umpire at this time.

Further, although Defendant argues that Plaintiff cannot rely on New Jersey's alternative dispute resolution statute in support of its request that the Court appoint an umpire, the Court need not even consider the applicability of the New Jersey alternative dispute resolution statute in this case, as the Policy entered into by both parties explicitly authorizes a court of competent jurisdiction to appoint an umpire if the parties' appraisers cannot agree on one. In particular, the Policy states:

> If we [Westchester] and you [DC Plastics] disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. **If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction**. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will: a. Pay its chosen appraiser; and b. Bear the other expenses of the appraisal and umpire equally. If there is an appraisal, we [Westchester] will still retain our right to deny the claim.

Insurance Policy between Plaintiff and Defendant, Section E(2) (emphasis added). As such, the Court is authorized by the Policy to appoint an umpire if each party's appraiser cannot agree on one.

Nevertheless, Defendant avers that the Court should not move forward with appointing an umpire at this time, based on its assertion that there are still outstanding coverage issues. More specifically, Defendant argues that, under New Jersey law, appraisal is improper where unresolved coverage issues exist and that this is the case here. However, Defendant has not pointed to anything in either the case law or the Policy itself that states that coverage issues must be handled *before* the appraisal process. Rather, as the cases referenced by Defendant demonstrate, New Jersey law simply makes it clear that appraisers (and umpires) cannot make legal determinations and may only determine a disputed amount of loss, not a party's liability. Rastelli Bros., Inc. v. Netherlands Ins. Co., 68 F. Supp. 2d 448, 449 (D.N.J. 1999); Elberon Bathing Co. v. Ambassador Ins. Co., 77 N.J. 1, 15 (N.J. 1978); German Auto. of Tinto Falls, Inc. v. Harleysville Ins. Co. of N.J., No. A-2571-13T3, 2014 N.J. Super. Unpub. LEXIS 1952, at *5-6 (N.J. Sup. Ct. App. Div. July 29, 2014). In fact, in one of the cases cited by Defendant where the court denied the plaintiff's request for appraisal, Rastelli Bros., the court specifically based its decision on that fact that the defendant there did not dispute the amount of loss, and only disputed whether the loss was covered – making it so that there was nothing for an appraiser to determine. 68 F. Supp. 2d at 449. Here, unlike in Rastelli Bros., the parties disagree as to the amount of loss that Plaintiff suffered. Further, even if outstanding liability issues exist, there is no reason to delay determining the amount of the loss in the meantime, as appointing an umpire will in no way prevent Defendant from contesting liability later on to all or part of Plaintiff's

claims. Indeed, the Policy itself expressly states that "[i]f there is an appraisal, we [Westchester] will still retain our right to deny the claim." Insurance Policy between Plaintiff and Defendant, Section E(2). As such, it is appropriate for the parties to move forward with the appraisal process at this time. Therefore, the Court directs the parties to proceed with the appraisal process as set forth in the Policy. Each party's appointed appraiser should follow the appraisal procedure as set forth in the Policy, and if either party's prior appraiser is no longer available, said party shall select its own substitute appraiser. Then, if each party's appraisers still cannot agree on the appointment of an umpire, the court will appoint one.

Nonetheless, the Court notes that at this time that this appraisal process must be limited to Plaintiff's property and machinery damages claims, as Plaintiff previously voluntarily dismissed its claims for business interruption, as well as its bad faith claims for damages. Plaintiff is judicially estopped from asserting those claims since, in reliance on Plaintiff's offer to voluntarily dismiss said claims, the Court chose not to adopt Magistrate Judge Waldor's recommendation that the entire case be dismissed and instead remanded the case back to Magistrate Judge Waldor for further consideration. Thus, to the extent that Plaintiff's voluntary dismissal of its business interruption claims and bad faith claims for damages may not have been formally endorsed by the Court at that time, they will now be dismissed with prejudice by the Court.

Finally, as for Defendant's motion for summary judgment, it will be denied. In support of its motion for summary judgment, Defendant asserts that it has completely fulfilled its obligations toward Plaintiff under the Policy. In particular, Defendant asserts that Plaintiff's initial damages claim was already fully paid out and that Magistrate Judge Waldor dismissed

Plaintiff's supplemental damages claim. However, as previously explained, the supplemental damages claim was not dismissed by Magistrate Judge Waldor. Then, as for whether the initial damages claim has been fully paid out by Defendant, that depends on what the umpire determines the amount of loss to be during the appraisal process. As such, because the Court has found that this disputed amount of loss must be decided through the appraisal process set forth in the Policy, Defendant cannot claim at this time that Plaintiff has already been fully compensated for its initial damages claim. Therefore, Defendant's motion for summary judgment will be denied.

## II. ORDER

For the foregoing reasons, it is **SO ORDERED** that Plaintiff's claims for business interruption and bad faith damages are hereby **DISMISSED** with prejudice; and it is further

**ORDERED** that Plaintiff's motion for summary judgment in part for the appointment of an umpire [ECF 89] is hereby **GRANTED**; and it is further

**ORDERED** that Plaintiff and Defendant must each retain their own respective appraiser, and that if either party's prior appraiser is no longer available, said party must retain a substitute appraiser for itself; and it is further

**ORDERED** that if Plaintiff's appraiser and Defendant's appraiser cannot agree on the selection of an umpire, the Court will appoint an umpire; and it is further

**ORDERED** that, by June 2, 2021, Plaintiff and Defendant shall file a letter advising the Court as to the status of the appraisal process and whether their respective appraisers have agreed upon an umpire; and it is further

**ORDERED** that the proceedings in this matter are **STAYED** pending completion of the appraisal process; and it is further

**ORDERED** that Defendant's motion for summary judgment [ECF 88] is hereby **DENIED**.

<u>    s/ Stanley R. Chesler    </u><br>
STANLEY R. CHESLER<br>
United States District Judge

Dated: May 19, 2021