NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DC PLASTIC PRODUCTS CORP., | : : : | Civil Action No. 17-13092 (SRC) |
| Plaintiff, | : : | OPINION & ORDER |
| v. | : : |  |
| WESTCHESTER SURPLUS LINES INSURANCE CO., | : : : |  |
| Defendant. | : : |  |

**CHESLER**, District Judge

This matter comes before the Court on Plaintiff's motion to preclude Defendant from disclosing certain statements about Plaintiff's chosen appraiser and Defendant's cross-motion to preclude Plaintiff from using its chosen appraiser. The motions have been fully briefed, and the Court has reviewed the papers filed by the parties. The Court has determined that oral argument is not necessary and rules on the motions as follows.

**I.     BACKGROUND**[1]

This case revolves around Plaintiff DC Plastic Products Corporation's ("Plaintiff" or "DC Plastics") insurance claim for damages sustained at its Bayonne, New Jersey premises due to Superstorm Sandy. Defendant Westchester Surplus Lines Insurance Company ("Defendant" or "Westchester") is an insurance company that insured Plaintiff's premises under a policy effective

---

[1] For further background information surrounding this action, please see the Court's prior Opinions for this case.

1

at the time of Superstorm Sandy (the "Policy"). After Plaintiff's premises suffered damages as a result of Superstorm Sandy in October of 2012, Plaintiff submitted claims with Westchester under the Policy and Westchester made certain payments to Plaintiff. Since then, Plaintiff and Defendant have been unable to agree as to whether Plaintiff is due additional payments under the Policy. As such, after bringing suit against Defendant, Plaintiff requested that the Court appoint an impartial umpire for the appraisal process.

In May of 2021, the Court granted Plaintiff's motion and ordered Plaintiff and Defendant to each retain their own respective appraiser, and stated further that, subsequently, if Plaintiff's appraiser and Defendant's appraiser cannot agree on the selection of an umpire, the Court will appoint an umpire. Plaintiff and Defendant then informed the Court that they had each selected an appraiser. However, Defendant has since objected to Plaintiff's chosen appraiser, M.M., asserting that he was previously convicted for insurance fraud. With the Court's permission, both Plaintiff and Defendant filed briefs as to this issue under seal. More specifically, Plaintiff has requested that Defendant be precluded from disclosing statements about M.M.'s conviction history, and Defendant has requested that Plaintiff be precluded from going forward with M.M. as its appraiser.

## II. DISCUSSION

The Court will first consider Defendant's request that Plaintiff be precluded from going forward with M.M. as its appraiser, as how this request is decided necessarily affects the second question about whether Defendant should be prevented from making certain statements about M.M.'s background. The Policy states: "If we [Defendant] and you [Plaintiff] disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of

the loss. In this event, each party will select a competent and impartial appraiser." Insurance Policy between Plaintiff and Defendant, Section E(2). After Plaintiff informed Defendant that it had chosen M.M. as its appraiser, Defendant found a news report on the internet that stated that M.M. had been convicted of insurance fraud. As such, Defendant argues that Plaintiff should not be able to use M.M. as its appraiser, as "[a]n appraiser who has been convicted for insurance fraud while acting as a public adjuster cannot be considered a 'competent and impartial' appraiser." Def.'s Br. at 4.

However, M.M.'s conviction has been expunged under New Jersey law, and he is currently a licensed public adjuster in New Jersey. As such, by allowing M.M. to become licensed again as a public adjuster, the state of New Jersey has already determined that he is competent to serve as an appraiser. Moreover, Defendant has made no demonstration of bias on behalf of M.M., and thus the Court has no concerns about his impartiality either. Therefore, because M.M. is a competent and impartial appraiser, Plaintiff may retain him as its appraiser in this case and Defendant's cross-motion to preclude Plaintiff from retaining M.M. as its appraiser must be denied.

Next, the Court will consider whether Defendant should be precluded from presenting evidence or making public arguments or statements before the Court, the appraisers and umpire in this matter mentioning any prior guilty plea for insurance fraud by M.M. In support of this motion, Plaintiff points to the expungement order issued by the Superior Court of New Jersey, Law Division, Essex County, which states that any records of M.M.'s arrest and conviction for insurance fraud are deemed expunged, "that the expunged records . . . shall not be released for any reason except as authorized by law" and "that the "arrest/or conviction . . . shall be deemed

3

not to have occurred and [M.M.] may answer accordingly any question relating to its occurrence." M.M. Expungement Order (Ex. A to Pl.'s Br.), at 2.

In response, in reliance on United States v. Rowlands, which states that "'in general when a defendant moves to expunge records, she asks that the court destroy or seal the records of the fact of the defendant's conviction and not the conviction itself[,]'" Defendant claims that M.M.'s expungement did not actually erase his conviction. 451 F.3d 173, 176 (3d Cir. 2006) (quoting United States v. Crowell, 374 F.3d 790, 792 (9th Cir. 2004)). However, Rowlands is not relevant to this motion, as the Third Circuit there was considering whether "*federal courts* have the power to authorize expungement of a criminal record," not how an expungement works under New Jersey *state law*. Id. at 174 (emphasis added). Indeed, even the passage in Rowlands quoted by Defendant, about an expungement generally not destroying the conviction itself, actually begins with the Third Circuit's explanation that "different states may define 'expungement' differently . . . ." Id. at 176. In this context, New Jersey has clearly defined the effect of an expungement order differently than the federal courts, as M.M.'s New Jersey expungement order explicitly states that the "arrest/or conviction . . . shall be deemed not to have occurred . . . ." M.M. Expungement Order (Ex. A to Pl.'s Br.), at 2. Under the New Jersey expungement order, M.M.'s conviction cannot be revealed by anyone and M.M. has the right to state that he has never been arrested nor convicted.

Defendant has also claimed that, even if it cannot reference M.M.'s actual judgment of conviction, because it was able to find public news reports of M.M.'s conviction on the internet, it should be able to utilize those public reports. In support of this point, Defendant points to Nunez v. Pachman, which explains that New Jersey law does not create a constitutional right of

4

privacy in an expunged criminal record, as news account of a defendant's criminal acts may still exist after the official records are destroyed. 578 F.3d 228, 233 (3d Cir. 2009). However, while it might be true that M.M. has no constitutional right of privacy in his expunged records, and that if he were to be cross-examined in a criminal case that one could likely rely on these public reports to provide an adequate basis for questioning him about his prior criminal actions, this is not relevant here, as M.M. is not a witness in this case and thus his credibility cannot be put into issue. Rather, M.M. may only issue an appraisal report, and if M.M. and Defendant's appraiser are unable to agree, then an umpire will make a final decision regarding appraisal. M.M. cannot be cross-examined and, if an umpire is ultimately needed, news reports about M.M.'s conviction cannot be revealed to the umpire. These news reports are not relevant to the appraisal itself, as M.M. is a licensed and qualified appraiser, and in fact, are purely hearsay, as the only credible proof for M.M.'s conviction is the judgment of conviction, which cannot be referenced because of the expungement order. As such, Plaintiff's motion to preclude Defendant from disclosing statements about M.M.'s conviction history will be granted.

### III.  ORDER

For the foregoing reasons, it is

**SO ORDERED** that the Clerk of the Court shall re-open this matter for the purposes of this Order only; and it is further

**ORDERED** that Plaintiff's motion to preclude Defendant from disclosing statements about Plaintiff's appraiser's conviction history [ECF 111] is hereby **GRANTED**; and it is further

**ORDERED** that Defendant's cross-motion to preclude Plaintiff from using its chosen appraiser [ECF 117] is hereby **DENIED**; and it is further

**ORDERED** that, by September 24, 2021, Plaintiff and Defendant shall file a letter advising the Court as to the status of the appraisal process and whether their respective appraisers have agreed upon an umpire; and it is further

**ORDERED** that if Plaintiff's appraiser and Defendant's appraiser cannot agree on the selection of an umpire, the Court will appoint an umpire; and it is further

**ORDERED** that this matter shall remain **STAYED** pending completion of the appraisal process.

                                                                s/ Stanley R. Chesler
                                                   STANLEY R. CHESLER
                                             United States District Judge

Dated: August 26, 2021