NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| DC PLASTIC PRODUCTS CORPORATION, | : : : : | **Civil Action No. 17-13092 (SRC)** |
| Plaintiff, | : : | |
| v. | : : : : | **OPINION** |
| WESTCHESTER SUPLUS LINES INSURANCE COMPANY, | : : : : | |
| Defendant. | : : | |

**CHESLER**, District Judge

      This matter comes before the Court on a motion for summary judgment filed by Defendant Westchester Surplus Lines Insurance Company ("Defendant"). Plaintiff DC Plastic Products Corporation ("Plaintiff") opposes the motion. The Court, having considered the papers filed by the parties, proceeds to rule on the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will grant Defendant's motion.

      **I.**     **Background**

      This case arises out of an insurance dispute over damages caused by Hurricane Sandy. Plaintiff alleges it owned a building in Bayonne, New Jersey which was damaged by Hurricane Sandy in 2012. (Complaint ¶ 1, 6-7). At the time of the hurricane, Plaintiff was covered under an insurance policy (the "policy") issued by Defendants. (Complaint ¶ 3; Answer ¶ 3). Defendants paid $951,102.89 to Plaintiffs before the initiation of this lawsuit. (Complaint ¶ 14; Answer ¶ 14). On October 26, 2017, Plaintiff filed a complaint in the Superior Court of New Jersey alleging

Defendant's payment was inadequate and did not satisfy its obligations under the policy. (Complaint ¶ 14). On December 14, 2017, Defendant removed the case to federal court.[1] (ECF No. 1).

The case proceeded to discovery. However, starting in the spring of 2018, Plaintiff repeatedly failed to respond to Defendant's discovery requests.[2] (ECF Nos. 27, 28). In response to a motion to dismiss and compel appraisal filed by Plaintiff in August 2018, Defendant filed a cross motion to dismiss over Plaintiff's failures to respond to discovery requests. (ECF No. 32). Magistrate Judge Waldor issued a Report and Recommendation recommending the Court grant Defendant's motion and dismiss Plaintiff's claims. (ECF No. 38). On the same day, Plaintiff submitted a letter in which it proposed it would voluntarily dismiss its business interruption and bad faith claims, leaving only claims for physical loss and damage to its building and machinery. (ECF No. 39). This Court remanded the case back to Judge Waldor to determine whether dismissal as a discovery sanction was still appropriate in light of Plaintiff's offer to voluntarily dismiss its claims, and the case ultimately proceeded. (ECF No. 48).

The suit's progression was marked with further delay. For instance, a settlement conference, initially scheduled for June 21, 2019, was adjourned on various occasions at the request of the Plaintiff, totaling six months.[3] (ECF Nos. 57, 58, 59). Plaintiff was then ordered to attend a settlement conference on January 15, 2020.[4] (ECF No. 60). Plaintiff's counsel submitted a letter saying Plaintiff could not go forward with the January 15 conference because he, Plaintiff's

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1332.
[2] Plaintiff's filings state these delays were caused by health concerns. (ECF No. 28).
[3] Plaintiff's filings state these delays were caused by health concerns. (ECF No. 61).
[4] The Order required the attorney of record and the personal attorney for Plaintiff's CEO to attend the conference. (ECF No. 60).

2

counsel, had been terminated, and Plaintiff's CEO apparently "had been mandated to go to Hungary by the U.S. State Department." (ECF No. 61 at 3). Plaintiff's counsel was relieved of service. The Court initially gave Plaintiff two months to find a new attorney, but that was later extended to six months due to health concerns of Plaintiff's CEO. (ECF Nos. 71, 72).

In early 2021, Defendant filed a motion for summary judgment (ECF No. 88), and Plaintiff, now with a new attorney, filed another cross motion to compel appraisal (ECF No. 89). The Court granted the appraisal motion. (ECF No. 99). Each party selected an appraiser, and the two appraisers jointly selected a neutral umpire. The umpire ultimately found the value of the damaged property was $1,121,916.00.[5] Plaintiff afterward filed a motion to vacate the umpire's award (ECF No. 138), which was denied (ECF No. 141).

Defendant paid Plaintiff $160,813.11, which reflected the award of $1,121,916.00, less the prior payment of $951,102.89 and a $10,000 deductible. (ECF No. 142-2). Defendant has now filed the instant motion for summary judgment, arguing it has discharged its obligations under the policy. (ECF No. 142). Plaintiff opposes the motion, arguing the Court should award Plaintiff prejudgment interest on its award from the appraisal process. It argues this contention constitutes a disputed issue precluding summary judgment. (ECF No. 143).

**II.    Discussion**

    a.  <u>Legal Standard</u>

---

[5] Plaintiff's appraiser estimated the damage cost $14,648,195.77. Defendant's appraiser estimated the damage cost $1,448,773.13. (ECF No. 138-4, 138-5). The umpire concluded the replacement value of the damaged property was $1,370,762.00, and the actual value of the damaged property was $1,121,916.00. (ECF No. 139-3).

The Court evaluates Defendant's motion for summary judgment under Federal Rule of Civil Procedure 56(a). Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is well-established that a factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant and material if, under the substantive law, the dispute would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Although the burden of proof rests initially with the party moving for summary judgment, when a motion is made and supported," the nonmoving party must establish the existence of a genuine issue as to a material fact in order to defeat the motion. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). The nonmovant cannot rest on mere allegations; instead, it must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248. When considering a motion for summary judgment, a district court "must view the evidence 'in the light most favorable to the opposing party.'" Tolan v. Cotton, 572 U.S. 650, 657 (2014) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). It may not make credibility determinations or otherwise weigh the evidence. Anderson, 477 U.S. at 255.

      b. Prejudgment Interest

In an action based in diversity, the issue of awarding prejudgment interest is a question of state law. Jarvis v. Johnson, 668 F.2d 740, 746 (3d Cir. 1982). In New Jersey, awards of prejudgment interest are within the discretion of the trial judge in accordance with equitable principals, except in tort cases where they are awarded as a matter of right as provided by New Jersey Court Rule 4:42-11(b). George H. Swatek, Inc. v. N. Star Graphics, Inc., 246 N.J. Super.

281, 286 (App. Div. 1991).  The issue of prejudgment interest is therefore not a fact question and may be resolved in a motion for summary judgment.[6]

Traditional equitable principles govern the award of prejudgment interest.  Ellmex Const. Co., Inc. v. Republic Ins. Co., 202 N.J. Super. 195, 209 (App. Div. 1985).  Awards of prejudgment interest promote two distinct policies.  First, "the defendant has had the use, and the plaintiff has not, of the amount in question," so a plaintiff should be compensated for the delay in receiving money that is rightfully its own.  County of Essex v. First Union Nat'l Bank, 186 N.J. 46, 61 (2006) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 506 (1974)).  Second, prejudgment interest can promote settlement by placing the costs of unnecessary delays on the defendant.  N.J. Mfrs. Ins. Co. v. Nat'l Cas. Co., 393 N.J. Super. 340, 354 (App. Div. 2007).

Here, the equities favor denying prejudgment interest.  From a compensatory perspective, it is true that Defendant had money that should have been paid to Plaintiff under the policy.  However, most of the delay in Plaintiff's receipt of that money is attributable to Plaintiff rather than Defendant.  Plaintiff filed this lawsuit in 2017, just shy of five years after Hurricane Sandy.  Once commenced, Plaintiff caused a significant amount of delay by ignoring discovery requests, delaying conferences, and taking six months to replace its attorney of record.  Plaintiff's dilatory conduct was so severe that Magistrate Judge Waldor recommended dismissing the case as a sanction, which the Plaintiff avoided by voluntarily dismissing several of its claims.  Plaintiff's conduct is the primary cause of the time it took to obtain a judgment.  Defendant on the other hand has largely acted in good faith.  It initially paid Plaintiff over 85% of what it would ultimately

---

[6] The Court considers these issues adequately briefed, as Plaintiff's Opposition Brief and Defendant's Reply Brief primarily discuss the issue of prejudgment interest.

5

owe,[7] and its litigation conduct has not caused repeated, significant delays. While a defendant acting in good faith does not necessarily absolve itself of liability for prejudgment interest, it is sufficient here when Plaintiff is substantially the cause of a delay in judgment. It is primarily because of Plaintiff that it secured a judgment now instead of some years prior. Defendant should not be required to bear the cost of that delay. Instead, it should fall on Plaintiff.

Additionally, awarding prejudgment interest would not promote settlement. New Jersey's policy deters dilatory tactics on the part of defendants by making lengthy adverse judgments more costly than expeditious settlements. But it does not provide incentives for speedy dispute resolution for a prevailing plaintiff. In fact, prejudgment interest can increase the recovery for a plaintiff in a drawn-out case. The Court does not want to reward Plaintiff for delays that, for the most part, it caused.

The denial of prejudgment interest is not punitive. Busik v. Levine, 63 N.J. 351, 358 (1973), superseded on other grounds by rule, N.J. Court Rule 4:42-11(b), as recognized in Kotzian v. Barr, 63 N.J. 351, 363-64 (1979). Indeed, the Court understands that several of the delays were caused by health issues of members of Plaintiffs' litigation and management teams. (ECF Nos. 28, 61, 71, 72). However, these issues do not justify placing the costs of Plaintiff's delays on the Defendant. Accordingly, the Court will deny Plaintiff's requested award of prejudgment interest.

    c. <u>Summary Judgment</u>

Because the Court declines to award prejudgment interest, Defendant has met all its obligations under the policy. The appraisal process determined Plaintiff's damage was valued at

---

[7] Defendant initially paid Plaintiff $951,102.89. It ultimately owed Plaintiff $1,111,916.00, which is $1,121,916.00 less a $10,000 deductible.

$1,121,916.00. Defendant owed Plaintiff that amount, less a $10,000 deductible, or $1,111,916.00. Defendant satisfied that obligation by its initial payment of $951,102.89 and its post-appraisal payment of $160,813.11. (Complaint ¶ 14; Answer ¶ 14; ECF No. 142-2). Plaintiff presents no additional facts to dispute that Defendant satisfied its obligation under the policy, nor does Plaintiff have any additional viable claims for relief. Therefore, the Court will grant Defendant's motion for summary judgment.

### III. Conclusion

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment. An appropriate order will be filed.

  s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: November 22, 2022